IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM J. HARTMAN AND<br>EMMA M. HARTMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DEUTSCHE BANK NATIONAL TRUST<br>CO., ET AL. | : | NO. 07-5407 |

## MEMORANDUM

**Padova, J.**                                                                                           **August 1, 2008**

Plaintiffs William and Emma Hartman instituted this action against five Defendants, all of whom were involved in various capacities with a residential mortgage that Plaintiffs acquired. Presently before the Court is the Motion to Dismiss of Defendant Mortgage Electronic Registration Services, Inc. ("MERS"). For the following reasons, we grant the Motion in its entirety and dismiss Plaintiffs' claims against MERS.

I.       BACKGROUND

On December 27, 2005, Plaintiffs refinanced their residence, obtaining a mortgage loan from Defendant Indymac Bancorp., Inc. ("Indymac"), with the assistance of Defendant Boris Becker, a mortgage broker, and his mortgage company, Defendant Empire Mortgage Services, Inc. ("Empire"). (Am. Compl. ¶¶ 16, 21.) The mortgage loan was serviced by Moving Defendant MERS and, at some point after closing, the loan was sold to Defendant Deutsche Bank National Trust Company ("Deutsche Bank"). (Id. ¶¶ 10, 18, 47-48.). According to the First Amended Complaint (the "Complaint"), Becker and Empire verbally promised Plaintiffs a fixed rate loan and a lower monthly payment, but presented loan documents at closing that were contrary to this verbal agreement. (Id. ¶¶ 31-37.) Plaintiffs signed those documents without knowledge of the discrepancies. (Id. ¶ 34.) The Complaint further alleges that Plaintiffs were charged a "Yield Spread

Premium," as well as other fees that were "concealed and/or under-disclosed," and which "artificially inflated" the loan terms. (Id. ¶¶ 40-42.)  Deutsche Bank instituted a mortgage foreclosure action against Plaintiffs on July 26, 2007.  (Id. ¶ 52.)

The factual allegations as to MERS are exceedingly sparse.  According to the Complaint, MERS "is a self-designated electronic clearinghouse(s)" that "acted as Plaintiffs' Mortgage Servicer and/or Nominee."  (Id. ¶¶ 10, 19.)  As the servicer of Plaintiffs' loan, MERS "primarily: (a) collected, monitored, and reported loan payments; (b) handled property tax payments; (3) handled insurance escrow issues; (d) oversaw foreclosing on defaulted loans; (e) handled late payments and other delinquency issues; and (f) remitted payments."  (Id. ¶ 18.)  MERS "earned a servicing fee for performing these administrative functions which is believed derived from the loan's unpaid principal balance."  (Id.)  Meanwhile, according to the Complaint, as a nominee, MERS was "created for the purpose of evading paper filing requirements . . . vis-a-vis record liens (such as, the Loan) . . . ."  (Id. ¶ 19.)

Plaintiffs commenced this action against Defendants on December 24, 2007.  The Complaint sets forth twenty Counts.[1]  On July 7, 2007, MERS filed a Motion to Dismiss all twenty Counts against it.  In their response to the Motion, Plaintiffs voluntarily withdrew eleven of the twenty Counts against MERS.[2]  The remaining Counts assert claims under the Truth in Lending Act

---

[1]Plaintiffs original complaint in this action contained ten Counts.  On June 19, 2008, after MERS, Indymac, and Deutsche Bank filed motions to dismiss, Plaintiffs filed the current Complaint, which mooted the then-pending motions.

[2]Plaintiffs have withdrawn Counts II (Home Ownership and Equity Protection Act); IV (Equal Credit Opportunity Act); V (Fair Credit Reporting Act); VI (Fair Debt Collection Practices Act), VIII (RICO); XI (Dragonetti); XII (Civil Rights); XIII (Slander of Title); and XX (Abuse & Misuse of Process).  (Pl. Br. at 4.)  Accordingly, we dismiss Counts II, IV, V, VI, VIII, XI, XII, XIII, and XX with prejudice.  In addition, Plaintiffs have withdrawn Counts VII (Credit Services Act &

("TILA"), 15 U.S.C. § 1601, et seq. (Count I); the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq. (Count III);[3] the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. Ann. § 2270.1, et seq. (Count IX); and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1, et seq. (Count X); as well as state law claims of Fraud & Fraudulent Misrepresentation (Count XIV); Breach of Contract & Warranty (Count XV); Negligence, Negligent Misrepresentation & Improvident (Negligent) Lending (Count XVI); Breach of the Covenant of Good Faith and Fair Dealing (Count XVII); and Conspiracy, Acting in Concert & Aiding and Abetting (Count XIX).[4]

II.  LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly,127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  While the Complaint's factual allegation need not be detailed, the grounds upon which the claim rests must be

---

Loan Broker Trade Practices) and XVIII (Fiduciary) as to all Defendants except Becker and Empire. We therefore dismiss these two Counts with prejudice against all Defendants except Becker and Empire.

[3]Plaintiff has withdrawn Count III (RESPA) insofar as it relates to a Qualified Written Request.  (Pl. Br. at 4.)  We therefore dismiss Count III with prejudice insofar as it relates to such a request.

[4]The Conspiracy Count is mislabeled in the Complaint as a second Count XIV.

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation omitted). In the end, we will grant the 12(b)(6) motion if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).

III.  DISCUSSION

As detailed below, Plaintiffs have failed to satisfy the 12(b)(6) standard in any of the nine Counts that remain against MERS in the Complaint.

A.  Count I -- TILA

In Count I, Plaintiffs assert that MERS and other Defendants are liable under TILA, because Plaintiffs did not receive various disclosures that the Act requires. (Am. Compl. ¶¶ 62-67.) However, only a creditor and its assignees can be held liable under TILA for violative acts or omissions. Morilus v. Countrywide Home Loans, Inc., Civ. A. No. 07-900, 2007 U.S. Dist. LEXIS 44943, at *6 (E.D. Pa. June 20, 2007) (citing Robey-Harcourt v. BenCorp Fin. Co., 326 F.3d 1140, 1141 (10th Cir. 2003)); 15 U.S.C. § 1641 (providing for liability of assignees). A creditor is one who both regularly extends consumer credit and is the person to whom the debt arising from the consumer credit is initially payable. 15 U.S.C. § 1602(f).

Here, Plaintiffs allege that MERS was the "servicer and/or nominee" of their mortgage. (See Am. Compl. ¶10). While they also baldly allege that all Defendants "regularly extend consumer credit" (id. ¶ 59), they do not specifically allege that MERS extended credit to them, and do not allege any other facts from which one could conclude that MERS was the one "to whom the debt arising from the consumer credit was initially payable." 15 U.S.C. § 1602(f). Furthermore, TILA

4

provides that a servicer such as MERS cannot be liable as an assignee unless it "is or was the owner of the obligation." Id. § 1641(f)(1) ("[A] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.") Plaintiffs do not allege that their mortgage loan was assigned to MERS, or that MERS is or ever was the owner of that obligation. See id. § 1641(f)(2) (stating that a servicer "shall not be treated as the owner of the obligation . . . on the basis of an assignment of the obligation from the creditor . . . solely for the administrative convenience of the servicer in servicing the obligation.")

Plaintiffs have therefore failed to set forth any basis on which MERS could be held liable under TILA. Accordingly, they have failed to state a TILA claim against MERS upon which relief may be granted, and we dismiss that claim.

  B.  Count III – RESPA

In Count III, Plaintiffs allege that Defendants, including MERS, are liable under RESPA for improper "fee-splitting," because they charged Plaintiffs unreasonable and undisclosed pre-paid finance charges that were not "bona fide." (Am. Compl. ¶ 72.) Section 2607(b) of RESPA, on which Plaintiffs rely, prohibits individuals from giving or accepting "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b) (emphasis added); see also id. § 2607(c) (RESPA does not prohibit the "payment of a bona fide salary or compensation or other payment . . for services actually performed."). The mere fact that a consumer is overcharged for services rendered does not give rise to a cause of action under this provision. Santiago v. GMAC Mortgage Group, Inc., 417 F.3d 384,

5

387 (3d Cir. 2005).

Plaintiffs allege only that MERS "earned a servicing fee for performing . . . administrative functions . . . ." (Am. Compl. ¶ 18.) They do not allege that MERS was paid any monies "other than for services actually performed." 12 U.S.C. § 2607(b). Likewise, they do not allege that MERS collected any money from Plaintiffs and then shared that money with others who had performed no bona fide services. In the absence of any such factual allegations, Plaintiffs have failed to state a cognizable claim against MERS for a fee-sharing violation under RESPA, and we therefore dismiss the RESPA claim against MERS.

      C.      <u>Count IX -- FCEUA</u>

In Count IX of the Amended Complaint, Plaintiffs assert that MERS and other Defendants violated the FCEUA by communicating with them in an attempt to collect a debt. <u>See</u> 73 Pa. Stat. Ann. § 2270.2 (FCEUA "establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts."); <u>id.</u> § 2270.4 (setting forth conduct that constitutes unfair or deceptive acts or practices). In support of this claim, Plaintiffs allege generally that "Defendants sent communications or communicated with Plaintiffs in an attempt to collect a debt." (Am. Compl. ¶ 82.) They further allege, without elaboration, that Defendants "used unfair and unconscionable collection methods," gave "a false impression of the character, extent or legal status of the alleged debt," used "false and deceptive collection methods," made "threats and/or [took] illegal action," and "otherwise used false, deceptive, misleading, and unfair and unconscionable means to collect and/or attempt to collect a debt." (<u>Id.</u> ¶ 85.)

The Complaint, however, does not identify a single communication between MERS and Plaintiffs, much less one that constituted an "attempt to collect a debt." It also contains no

allegations regarding "collection methods" used by MERS, threats made by MERS, or illegal action taken by MERS. Finally, it contains no facts indicating that MERS ever created a false impression as to the "character, extent or legal status" of Plaintiffs' debt. Under the Twombly standard, Plaintiffs have not alleged facts pertaining to MERS that would even bring MERS within the scope of the FCEUA claim as they themselves have defined it. Plaintiffs have therefore failed to state a claim upon which relief may be granted, and we grant MERS's Motion to Dismiss the FCEUA claim against it.

> D.   Count X -- UTPCPL

In Count X, Plaintiffs allege that Defendants, including MERS, violated the UTPCPL by "engaging in unfair or deceptive acts and practices" in connection with their mortgage loan. (Am. Compl. ¶ 86.) Specifically, Plaintiffs allege that Defendants (1) "misrepresented to Plaintiffs the character, extent, or amount of the debt or its status in a legal proceeding," (2) "engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding," citing 73 Pa. Stat. Ann. 201-2(4)(xxi), (3) "imposed credit costs expressly prohibited by Federal and Pennsylvania law, and failed to comply with TILA, HOEPA, RESPA, ECOA, FDCPA, CSA, Usury, RICO (state and federal), UCC, FTC, and the FCEUA, which are per se violations of UTPCPL," (4) "misrepresented to Plaintiffs that the loan would be beneficial when in fact it was not; and Defendants knew it was not," citing 73 Pa. Stat. Ann. § 201-2(4)(v);[5] and (5) "misrepresented the characteristics or benefits of the loan." (Am. Compl. ¶ 87.)

Any individual who engages in "unfair methods of competition or unfair or deceptive acts

---

[5] Plaintiffs actually cite "79 P.S. § 202-1(v)," but this is apparently a typographical error, as no such statutory provision exists and the language in the Complaint appears to track that in 73 Pa. Stat. Ann. § 201-2(4)(v).

or practices" can be held liable under the UTPCPL. 73 Pa. Stat. Ann. § 201-3. The statute sets forth a variety of specific conduct that constitutes "unfair methods of competition" and/or "unfair or deceptive acts or practices." Id. § 201-2(4). Among that conduct is "[r]epresenting that goods or services have . . . characteristics, . . . uses, [or] benefits . . . that they do not have . . . ." Id. § 201-2(4)(v). In addition, pursuant to a catch-all provision, it is also a statutory violation to "[e]ngag[e] in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-2(4)(xxi). To state a claim under the UTCPCL, a plaintiff must "allege with particularity the elements necessary to support a violation . . . as to a particular Defendant." Morilus, 2007 U.S. Dist. LEXIS 44943, *16 (citing Wilson v. Parisi, Civ. A. No. 04-1737, 2006 U.S. Dist. LEXIS 95952, *38 n.13 (M.D. Pa. Feb. 7, 2006)).

Plaintiffs' UTCPCL claim against MERS, however, just like their FCEUA claim, is nothing more than "labels and conclusions" and a "formulaic recitation of the elements of a cause of action." See Twombly, 127 S. Ct. at 1965. Plaintiffs have pled no facts that plausibly suggest that MERS misrepresented the nature, characteristics or status of the loan, or that the loan would be beneficial to Plaintiffs. They do not allege that MERS imposed any credit costs on them, and do not specify what, if anything, MERS may have done to violate the laundry list of statutes and laws referenced within the Count. (See Am. Compl. ¶ 86(c)). They do allege that MERS was "created for the purpose of evading paper filing requirements common to all jurisdictions vis-á-vis record liens (such as, the Loan) and intending to conceal its members and avoid liability hereunder by shrouding the Loan with self-created though not legally recognized corporate veil affect." (Am. Compl. ¶ 19). However, this vague and cryptic conclusory allegation, which is supported by no allegations of fact, cannot suffice to state a cognizable claim against MERS under the UTCPCL. Accordingly, we grant

MERS's Motion to Dismiss insofar as it seeks dismissal of the UTCPL claim against it.

  E. <u>Count XIV – Fraud and Fraudulent Misrepresentation</u>

  In Count XIV, Plaintiffs assert a state law claim of fraud and fraudulent misrepresentation against all of the Defendants, including MERS. However, rather than detailing the allegedly fraudulent acts within the Count, they merely incorporate by reference the prior allegations in the Complaint, and assert that the "aforesaid misrepresentations and/or omissions were made in an attempt to procure pecuniary gain from a security interest in Plaintiffs' home, monetary consideration from Plaintiffs and/or otherwise from the proceeds of the loan." (Am. Compl. ¶ 98.)

  Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this requirement, a plaintiff must plead: "(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his [or her] damage." <u>In re Suprema Specialties, Inc. Securities Litig.</u>, 438 F.3d 256, 270 (3d Cir. 2006) (quoting <u>Shapiro v. UJB Fin. Corp.</u>, 964 F.2d 272, 284 (3d Cir. 1992)). Plaintiffs, however, have not identified a single misrepresentation or omission by MERS. They have therefore failed to state a claim upon which relief can be granted, and we dismiss the fraud/ fraudulent misrepresentation claim against MERS.

  F. <u>Count XV – Breach of Contract & Warranty</u>

  In Count XV of the Complaint, which is entitled "Breach of Contract & Warranty," Plaintiffs assert that "Plaintiffs and Defendants were parties to an express contracts(s) and/or contract(s) and/or warranties implied at law, which includes but is not limited to Defendants' [sic] as third-party

9

beneficiaries, which Defendants are in breach of." (Am. Compl. ¶ 100). Nowhere in the Complaint, however, do Plaintiffs identify any contract or warranty that exists between them and MERS. Accordingly, they have not raised their right to relief beyond a pure speculative level, and have failed to state breach of contract or warranty claims against MERS. We therefore grant MERS's motion to dismiss those claims.

   G. Counts XVI, XVII, and XIX -- Negligence, Negligent Misrepresentation & Improvident (Negligent) Lending; Breach of Covenant of Good Faith and Fair Dealing; and Conspiracy

Plaintiffs' remaining claims also fail to state claims upon which relief may be granted against MERS. Each of the remaining three Counts is comprised of a single, conclusory sentence. The Negligence Count asserts: "At all times material, Defendant acted negligently, carelessly, and/or recklessly." (Am. Compl. ¶ 101.) The Covenant of Good Faith and Fair Dealing Count asserts: "At all times material, Defendants were in violation of the covenant of good faith and fair dealing." (Id. ¶ 102.) And, finally, the Conspiracy Count asserts: "At all times material, Defendants acted conspiratorially, in concert, and/or arising and abetting each other to perpetrate harm and/or misconduct." (Id. ¶ 104.)

The Complaint in this case, even read liberally, does not set forth any facts regarding MERS from which we can discern any arguably improper conduct that may have violated any of the state laws set forth in these Counts. As stated above, the facts alleged that pertain to MERS are few. According to the Complaint, MERS serviced Plaintiffs' mortgage and received administrative fees for doing so. (Id. ¶¶ 10, 18.) It may have also had some involvement in the foreclosure action on Plaintiffs' loan, although Plaintiffs never allege that explicitly, even in their brief in response to the Motion to Dismiss. (See Am. Compl. ¶ 18 ("As to the Loan, Defendant, Servicer, . . . (d) oversaw

foreclosing on defaulted loans . . . ."); Pl. Br. at 13 ("Per the contract between MERS and its members, MERS serves the mortgagee of record in an administrative capacity with no rights to payment but retaining the right to act as Plaintiff in a foreclosure action at the request of the member which is the beneficial owner of the loan.") (citations omitted)). There are no other material factual allegations regarding MERS's conduct in connection with Plaintiff's mortgage.

Under these circumstances, Plaintiffs have set forth no facts that could plausibly support their state law negligence, good faith and fair dealing, or conspiracy claims against MERS. We therefore grant MERS's Motion to Dismiss those claims as well.

IV.   CONCLUSION

Plaintiffs assert in their response to the Motion to Dismiss that "[b]ecause MERS' self-created mission was to attempt to evade liability through avoiding required record assignment mechanisms, MERS participation cannot be known at present and requires discovery . . . ." (Pl. Br. at 14.) They further assert that "to dismiss MERS at this stage is to, without opportunity for discovery, countenance its admitted mission - which is precisely to participate in all aspects of lending but evade judicial review at its discretion by its design." (Id.) However, where a plaintiff has failed to raise a right to relief beyond a purely speculative level, dismissal under Rule 12(b)(6) is entirely proper. Twombly, 127 S. Ct. at 1965. Here, Plaintiffs have not even set forth a coherent theory of liability with respect to MERS, and we will not permit them to go on a fishing expedition in the hopes of identifying a cognizable claim. Given the dearth of factual allegations concerning MERS, as well as the fact that Plaintiffs have already amended their complaint once, we also find that any attempt to amend the Complaint further to comply with the federal pleading requirements would be futile. Thus, as explained above, we grant MERS's Motion to Dismiss in its entirety.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM J. HARTMAN AND<br>EMMA M. HARTMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DEUTSCHE BANK NATIONAL TRUST<br>CO., ET AL. | : | NO. 07-5407 |

**ORDER**

**AND NOW**, this 1st day of August, 2008, upon consideration of the Defendant Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss (Docket No. 43), and Plaintiffs' response thereto, **IT IS HEREBY ORDERED** that:

1. The Motion is **GRANTED**.

2. Counts II, IV, V, VI, VIII, XI, XII, XIII, and XX are **DISMISSED** as to all Defendants.

3. Count VII and XVIII are **DISMISSED** as to all Defendants except Boris Becker and Empire Mortgage Services, Inc.

4. Count III is **DISMISSED** as to all Defendants insofar as it concerns a Qualified Written Request, and **DISMISSED** in its entirety as to Defendant Mortgage Electronic Registration Systems, Inc. ("MERS").

5. Counts I, IX, X, XIV, XV, XVI, XVII, and XIX are **DISMISSED** as to MERS only.

6. MERS's Motion to Join Defendant Indymac Bank, F.S.B.'s and Deutsche Bank National Trust Company's Motion for Leave to File a Reply Brief and in the proposed Reply Brief itself (Docket No. 47) is **DENIED AS MOOT**.

7. **JUDGMENT IS ENTERED** in favor of MERS and against Plaintiffs.

BY THE COURT:

_____
John R. Padova, J.